UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHAD CUTLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 3:23-cv-03127-GCS |
| | ) |
| ANTHONY WILLS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Plaintiff Chad Cutler, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff claims that he is suffering from untreated and undiagnosed episodes of paralysis that put him in danger of attack and sexual assault by other inmates. Plaintiff seeks monetary damages and injunctive relief. Before the Court is Plaintiff's motion for preliminary injunction. (Doc. 8). Defendant Wills filed an opposition. (Doc. 23). On November 30, 2023, the Court held a hearing on the motion and heard testimony from Plaintiff, Angela Crain, Menard Health Care Administrator, and Lieutenant Mark Hanks, an Internal Affairs supervisor. (Doc. 33). The Court took the matter under advisement and allowed the parties additional time to supplement the record. *Id.* Both parties filed

supplemental documents. (Doc. 36, 37, 43, 46, 47, 49).[1] For the reasons delineated below, the Court denies the motion.

Plaintiff alleges that he has low functioning autism and another condition that has not been diagnosed or evaluated. (Doc. 1, p. 3). This second condition causes Plaintiff to enter a paralytic state when under extreme stress or at other random moments. During these episodes, Plaintiff experiences loss of voluntary movement that lasts for minutes or hours. As a result, Plaintiff claims that he is utterly defenseless to violent or sexual advances by other inmates when he is in such a state. *Id.*

On July 10, 2023, Plaintiff began writing the medical department at Menard with requests for urgent medical attention. (Doc. 1, p. 4). Plaintiff states he has submitted over fifty requests. According to Plaintiff, all these requests were ignored over a period of seventy days. *Id.*

Plaintiff has also submitted three PREA reports due to the high likelihood of being raped or maimed by a cellmate during a paralytic episode. (Doc. 1, p. 4). In July, Plaintiff wrote to his counselor twice seeking assistance with acquiring medical attention and did not receive a response. *Id.* at p. 5. On July 21, 2023, Plaintiff appeared before the Administrative Review Board ("ARB") and described his unsuccessful attempts to be treated; he also claimed that his condition places him in danger. *Id.* Plaintiff further wrote

---

[1] Documents 36, 37, and 47 are filed under seal as these documents pertain to Prison Rape Elimination Act ("PREA") claims made by Plaintiff. The Court thoroughly reviewed these documents prior to issuing this Memorandum & Order. However, the Court is not citing to these documents or utilizing the information contained in these documents in rendering its decision as the Court finds that they are not necessary to determine the outcome of the pending motion.

emergency grievances on August 20, 2023, and September 1, 2023. On September 27, 2023, Plaintiff again appeared before the ARB and presented his issues with obtaining medical treatment and receiving recognition of his condition by staff, which he claims makes him vulnerable to an attack by another inmate. (Doc. 9). Despite notifying prison officials that he was being denied medical treatment, his condition continues to go untreated and ignored by medical staff, thus placing him in a dangerous situation. *Id.*; (Doc. 9, p. 2-4). On October 11, 2023, Plaintiff filed his motion for preliminary injunction. (Doc. 8).

On October 16, 2023, the Court performed its preliminary screening Order pursuant to 28 U.S.C. § 1915A. The Court permitted Plaintiff to proceed on an Eighth Amendment claim against Defendant Wills for deliberate indifference to a serious medical need. (Doc. 11).

**DISCUSSION**

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that the plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). Plaintiff has the burden of demonstrating: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *See Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012).

In the context of prisoner litigation, there are further restrictions on a court's remedial power. The scope of a court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act ("PLRA"). *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). *See also Westefer*, 682 F.3d at 683 (noting that the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a *mandatory* preliminary injunction. *See Graham v. Medical Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," because they require the court to command a defendant to take a particular action. *Id. See also W.A. Mack, Inc., v. General Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958) (stating that "[a] preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in the final decree.").

Here, Plaintiff seeks "[a]n order requiring Menard and I.D.O.C. to place Chad Cutler in strictly single cell status, protecting and isolating him from potential attackers." (Doc. 8, p. 3). In his reply brief, Plaintiff clarified his injunctive relief as follows: "[c]ourt ordered application of single-cell status until such time as a medical evaluation can be completed and further recommendations made." (Doc. 30, p. 4). Plaintiff maintains that he has demonstrated that he "suffers from a disabling condition which, in a prison environment and without protection, places him in grave danger on a daily basis." (Doc. 8, p. 4).

Regarding the first element, the Court must determine whether "plaintiff has any likelihood of success – in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). If Plaintiff meets his burden, the Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*

The undersigned finds that Plaintiff has not met his burden of demonstrating that he is entitled to a preliminary injunction. Plaintiff seeks single cell placement and a medical evaluation for his condition from medical staff at Menard. Despite Plaintiff's contentions in his reply brief that his "ability to articulate clearly his medical condition to this Court has been severely hindered by Defendant denying him medical attention since July 10th," (Doc. 30, p. 1), Plaintiff participated fully in the hearing, testified on his own behalf and cross-examined Defendants' witnesses without experiencing an episode of

this purported paralysis.2 Indeed, in his court filings prior to the hearing, Plaintiff warned the Court that he might not be able to get through the hearing because of this condition. However, the Court observed Plaintiff during this lengthy hearing, and Plaintiff did not appear to experience any of these issues.

Further, the undersigned notes that Plaintiff has not provided the Court with verifiable evidence that he has this medical condition or that this condition presents a serious need requiring immediate medical attention. The record does not contain a diagnosis regarding this medical condition from any doctor who may have seen Plaintiff prior to his incarceration or from any medical doctor during his incarceration, even though Plaintiff testified that he has had this issue his entire life.3 Plaintiff argues that he will suffer irreparable harm from this condition and that this condition puts him in grave danger of attacks. The undersigned notes that according to Plaintiff, his symptoms have persisted many years prior to his incarceration, continued while he has been incarcerated and have gotten worse in the last year during moments of extreme stress, shock or fear. However, he has not provided evidence that his symptoms have escalated or that his health has deteriorated. As to the frequency of these episodes, Plaintiff stated that in July 2023, the episodes began to increase to three to four times a week. When asked by the Court to explain what caused these episodes to occur more frequently, Plaintiff testified that in July 2023, he was moved from a good location to a bad one, which caused him a

---

2   The undersigned notes that the preliminary injunction hearing lasted over 3 ½ hours.

3   Plaintiff stated that, prior to incarceration, he never made a report of the episodes to doctors, but symptoms were discussed.

great deal of stress and anxiety. Specifically, Plaintiff stated that up until July 2023, he was in a cell house with small, single cells and then moved to a cell house with more aggressive individuals. Additionally, Plaintiff testified that his medical condition is not obvious to other inmates, as he tries to hide it. As a result, he has never been assaulted or threatened because of this medical condition.

The Court finds that Plaintiff has not shown a likelihood of success on the merits as to his claim regarding Defendant Wills's alleged deliberate indifference towards his serious medical needs. To succeed on this claim, Plaintiff must show: (1) that he suffers from an objectively serious medical need, and (2) that the prison officials knew of and disregarded an excessive risk to his health. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Plaintiff believes that he suffers from these episodes of paralysis, which would be an objectively serious and debilitating condition that would satisfy the first prong. However, as stated *supra* the record does not establish that Plaintiff suffers from this medical condition or that Defendant Wills knew of and disregarded such a risk to his health.[4]

First, the record does not reveal that Plaintiff has an objectively serious medical condition. In fact, Plaintiff admitted that he did not report this purported medical condition upon arriving to IDOC custody. Further, the record demonstrates that attempts were made to address whatever mental health concerns Plaintiff had. For example, on August 4, 2023, Lt. Hanks referred Plaintiff to Mental Health, but Plaintiff refused to go

---

[4] There is conflicting testimony regarding the 75 written requests Plaintiff claims he made regarding this issue by Plaintiff and Ms. Crain. Ms. Crain testified that after reviewing Plaintiff's medical records there were no medical requests from Plaintiff from June to the present and that there were no grievances written by Plaintiff regarding medical treatment.

on August 10, 2023. (Doc. 46-1, p. 18, 19). On August 12, 2023, Plaintiff wrote a letter asking for a full evaluation of his condition, and in this letter, he noted that this was at least his 17th written request. This letter has a handwritten notation: "Refused/Addressed 8/14/23 KW." *Id*. at p. 20. Thereafter, the medical record contains a refusal of services for Mental Health dated August 21, 2023. *Id*. at p. 21. Also, Plaintiff saw a nurse practitioner for this condition on November 22, 2023, wherein he was referred to Mental Health. *Id*. at p. 5. On November 29, 2023, Plaintiff was seen by Mental Health and found to have no current mental health diagnosis. *Id*. at p. 25. Just recently, Plaintiff saw a medical provider at Menard on December 29, 2023, wherein a CT scan of Plaintiff's brain was ordered, and Plaintiff was told to obtain and provide the name of his prior provider/providers who may have diagnosed him with any illness. (Doc. 46-1, p. 22-24). Thus, the Court finds that there is no objective evidence of Plaintiff's reported symptoms/medical condition or that the relevant authorities ignored any appreciable risk to Plaintiff's health. Therefore, Plaintiff has not established this prong of the test.

Second, Plaintiff must show that he lacks an adequate remedy at law. The Court concludes that Plaintiff has not demonstrated that his legal remedies are inadequate. Plaintiff can prosecute his case to achieve the legal remedies he seeks. An evaluation by a medical provider for care is the type of relief Plaintiff could obtain if he is ultimately successful at the conclusion of the case. Indeed, Plaintiff most recently had a medical appointment on December 29, 2023.[5] Such injunctive relief is not warranted when the

---

[5] The fact that Plaintiff had the medical evaluation on December 29, 2023, and a CT scan of his brain was ordered could render Plaintiff's request for a medical evaluation moot. S*ee, e.g.*,

order would give "to plaintiff the actual advantage which would be obtained in the final decree." *W.A. Mack*, 260 F.2d at 890.

Lastly, to demonstrate entitlement to preliminary relief, Plaintiff would need to establish that irreparable harm will result if injunctive relief does not issue. Here, Plaintiff has failed to show any actual danger that he is experiencing. He testified that he has not been attacked or threatened by anyone because of this medical condition. In fact, his situation stems from his status as an inmate, rather than from circumstances unique to him. He failed to identify any specific threat or assault he has received or why his situation is any different from other inmates.

## CONCLUSION

For the above-stated reasons, the Court **DENIES** Plaintiff's motion for preliminary injunction. (Doc. 8).

**IT IS SO ORDERED.**

**DATED:  February 7, 2024.**

Digitally signed by Judge Sison
Date: 2024.02.07
12:33:35 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

---

*Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009) (holding that the PLRA bars claims for injunctive relief that are moot). However, out of an abundance of caution, the Court addresses the merits of the motion.